IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 1:24-CR-00165 (MSN) |
| v. | ) | |
| | ) | |
| ABIODUN OGUNWALE, | ) | |
| a.k.a Abbey Ogunwale | ) | |
| | ) | |
| And | ) | |
| | ) | |
| ABIMBOLA AJAYI, | ) | |
| a.k.a. Abbi Ajayi | ) | |
| | ) | |
| Defendants. | ) | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS

Defendant Abimbola Ajayi (the "defendant" or "Ajayi")[1] moved to suppress the evidence

seized pursuant to search warrants issued pursuant to Federal Rule of Criminal Procedure 41, on

the grounds that the warrant was overbroad, lacked particularity, and failed to provide probable

cause to authorize the seizure of the categories of evidence that the warrant, on its face, authorized

the investigators to seize.[2]  ECF 36. That motion should be denied.

---

[1] Defendant Abimbola Ajayi's motion pertains to her Google accounts only and does not appear to litigate whether the searches of the other Google accounts was invalid, however, defendant Abiodun Ogunwale ("defendant Ogunwale" or "Ogunwale") moved to join the defendant's motion, which the court granted. ECF 29, 42.  The government's response applies to defendant Ogunwale's Google accounts as well.

[2] As a threshold matter, the government notes that a defendant "can only challenge a warrant that authorizes the search or seizure of items in which he had a protected Fourth Amendment interest. It is insufficient for the defendant to show that a third party had a protected interest in the information searched because 'it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections.'" *See United States v. Zelaya-Veliz*, 94 F.4th 321, 333 (2024) (quoting *Rakas v. Illinois*, 439 U.S. 128, 134 (1978)). Thus, defendant Abimbola Ajayi only has standing to challenge the search of her Google accounts, Target Account

Contrary to the defendants' claims, Magistrate Judge Buchanan was fully justified in finding that the warrant application supplied probable cause, was not overbroad and sufficiently particular. Even if the probable cause determination was incorrect and probable cause was lacking, however, the motion still should be denied, because the investigators conducting the searches relied in good faith on a facially valid warrant.

<u>Factual Background</u>

**A. Underlying Fraud and Money Laundering Investigation.**

Defendant Ogunwale was employed by the Non-Profit Corporation #1 ("The Non-Profit"). Dkt. 1. He became The Non-Profit's Acting Director of Business Development in approximately December 1, 2014. *Id.* at ¶ 2. In approximately June 1, 2015, he was promoted to the Director role. *Id.* In his position, Ogunwale oversaw The Non-Profit's hiring of external consultants to assist in developing proposals to bid on potential work opportunities. *Id.* at ¶¶ 14-15. This included initiating the hiring process of the consultants. *Id.* at ¶ 15. He also oversaw and approved the invoices submitted by the consultants. *Id.* at ¶ 17. From approximately April 2015 through June 2020, he used his position to defraud The Non-Profit. *Id.* at ¶¶ 7, 8-9. Ogunwale's embezzlement scheme involved three primary methods, (1) using consultants to submit fraudulent invoices, for which the consultants did not complete the work detailed, (2) using his own entity Compass Management Services and Solutions, LLC, ("Compass") to embezzle funds from The Non-Profit by submitting false expenditure reports, and (3) by embezzling through other means. *Id.* at ¶¶ 10, 12, 17, 18, 20, 22, 24, 26, 28. Notably, defendant Ogunwale also used a PayPal account and credit

---

6 and Target Account 7. Similarly, defendant Abiodun Ogunwale only has standing to challenge the search of his Google accounts, Target Account 1, Target Account 2, and Target Account 3. Neither defendant has standing to challenge the searches of Target Account 4 and Target Account 5.

card held in the name of another individual, Employee A, to execute this long-term embezzlement scheme. *Id.* at ¶¶ 18-21. Ajayi was one of the consultants by which Ogunwale conspired with to submit fraudulent invoices and defraud The Non-Profit. *Id.* at ¶¶ 29-34. In order to receive his portion of the fraud proceeds from the consultants, the consultant would transfer, or kickback funds received from The Non-Profit to Ogunwale. *Id.* at ¶¶ 11, 35. Specifically, as to Ajayi, some of the fraud proceeds initially received by her (or a company she controlled) were then transferred to Ogunwale via his company Compass. *Id.* at ¶ 35. She also transferred funds to him via other means, including paying his credit card and withdrawing funds in cash and depositing them in his account or the Compass account. *Id.* at ¶¶ 33, 35.

As to the portion of the scheme that Ajayi participated in, the government has significant evidence as to her guilt. Specifically, Ajayi submitted at least 20 false invoices detailing work that she claims to have completed. But she did not create these invoices. Instead, emails obtained from her email account show that Ogunwale would email her invoices directing her to submit them to The Non-Profit. *Id.* at ¶¶ 30-31. Some of the emails included specific instructions for her to follow, which she did. *Id.* at ¶ 31. The government has 20 emails, which include a false invoice (often in PDF and/or Excel format), from Ogunwale to Ajayi.[3]  In addition to the emails Ogunwale sent to Ajayi, witnesses familiar with some of the projects specifically detailed on the false invoices will testify that they did not work with Ajayi. Similarly, The Non-Profit routinely kept checklists regarding The Non-Profit's projects, and Ajayi was not listed as an individual who worked on the project specified on the invoice. Additionally, the Government is aware of at least five false invoices generated by Ajayi through her PayPal account that were submitted directly to Ogunwale

---

[3] The government also has emails between defendant Ogunwale and Consultant D.A. ("DA"). Again, Ogunwale provided DA invoices to submit to The Non-Profit, sometimes with instructions.

and subsequently used to substantiate fraudulent payments from Ogunwale using Non-Profit funds.

Between approximately April 2015 and June, the approximate total loss to The Non-Profit, based upon Ogunwale's conduct, with and without the co-conspirator consultants, totaled at least $660,000. Of this amount, between approximately September 2016 and May 2020, Ajayi received over $180,000, *id.* at ¶ 34, for which she then transferred at least $70,000 to Ogunwale. Ogunwale embezzled at least $85,000 from The Non-Profit through his company Compass. *Id.* at ¶ 24. Ogunwale embezzled less than $50,000, through various other means including false expense reports, for which he did not use a consultant.

On September 26, 2024, Ogunwale and Ajayi were indicted by a federal grand jury for various charges related to the embezzlement scheme. ECF 1. Both were indicted for conspiracy to commit mail and wire fraud (Count 1), wire fraud (Counts 3-4), and conspiracy to commit money laundering (Count 5). *Id.* Ogunwale was also indicted for a single count of mail fraud (Count 2). *Id*.

### B. Search Warrant Papers.

In May 2022, the U.S. Agency for International Development, Office of Inspector General ("USAID OIG") applied for an electronic search warrant out of the Eastern District of Virginia for 7 Google accounts (the "Target Accounts") that were connected to the defendant, defendant Ogunwale and another individual involved in the conspiracy, D.A. The affidavit that was appended to the application for the search warrant established probable cause to believe that evidence of mail fraud, wire fraud, honest services fraud, money laundering, and conspiracy in violation of 18 U.S.C. §§ 371, 1341, 1343, 1346, and 1956-1957 would be found within the Target Accounts. *See* ECF 36, Ex. 2. Target Account 1 was defendant Ogunwale's personal Google account, Target

Account 2 and Target Account 3 were associated with Ogunwale's company, Compass, Target Account 4 and Target Account 5 were associated with D.A., and Target Account 6 and Target Account 7 were associated with the defendant. *See id.* at ¶ 1.

The search warrant affidavit detailed how defendant Ogunwale executed a multi-year scheme to embezzle thousands from his employer, The Non-Profit, that violated multiple U.S. criminal statutes. *Id.* at ¶¶ 12-18, 25-28, 30-39, 47-50, 54, 59-69, and 70-89. The affidavit specifically noted how a PayPal account that was used to receive embezzled funds was established in 2014. *Id.* at ¶¶ 35-39. The PayPal account was purportedly held by Employee A but was linked to defendant Ogunwale's personal email address, Target Account 1. The affidavit also detailed how the defendant had joined Ogunwale's fraud scheme and described fraudulent invoices that the pair exchanged over email. *Id.* at ¶¶ 82, 86, 88.

The affidavit and warrant requested information pertaining to following 7 matters:

(a) information that constitutes evidence of identification or location of the user(s) of the [Target Accounts].

(b) information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the [Target Account] about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts.

(c) information that constitutes evidence indicating the [Target Accounts] user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation of planning, related to the criminal activity under investigation.

(d) information that constitutes evidence concerning how and when the [Target Accounts were] accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the [Target Account users].

(e) information that constitutes evidence concerning false or fraudulent claims or statements, mail fraud, wire fraud, money laundering, unlawful monetary transactions, or conspiracy.

(f) Information that constitutes evidence of concealment of the criminal activity under investigation; and/or

(g) Information that constitutes communications to, from, or between the subjects of this investigation.

On May 13, 2022, United States Magistrate Judge Teresa C. Buchanan authorized this search warrant. *Id.*

ARGUMENT

Defendant seeks to suppress and exclude evidence – including emails (which she admits that the government had probable cause to search and seize) – obtained pursuant to a federal search warrant, arguing that the warrant lacked particularity, probable cause and was overbroad. But, the warrant, including the accompanying affidavit and attachments, adequately identified the evidence subject to seizure, provided adequate probable cause, and justified the scope of the search. Moreover, this warrant was not so deficient as to particularity or probable cause as to prevent law enforcement agents from reasonably relying on it. Any constitutional infirmity therefore would not require suppression under the good-faith exception to the exclusionary rule. In any event, the cure for overbreadth is not the blanket suppression that the defendant seeks, rather any offending sections of the warrant may be severed, and the evidence collected under it suppressed.

I.     The Search Warrants Were Supported by Probable Cause.

    **A. The Legal Standard for Search Warrants.**

"The Fourth Amendment requires that, in the ordinary course, searches and seizures be conducted pursuant to a warrant issued 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' U.S. Const. amend. IV." *United States v. Qazah*, 810 F.3d 879, 885 (4th Cir. 2015). The test for the necessary particularity of a search warrant is "a pragmatic one: The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved." *Godbey v. Simmons,* 2014 WL 345648 *6 (E.D. Va. 2014 (Ellis, J.),

*affirmed,* 577 Fed. Appx. 239 (4th Cir. 2014), *quoting United States v. Davis*, 67 Fed. Appx. 771, 777 (4th Cir. 2003) and *United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979)).

"In making a probable cause assessment, a magistrate judge must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found.'" *United States v. McNeal*, 818 F.3d 141, 150 (4th Cir. 2016) (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "When reviewing a magistrate judge's probable cause determination, a court looks to whether there was a substantial basis for the decision." *United States v. Hurwitz*, 459 F.3d 463, 473 (4th Cir. 2006) (internal quotation omitted). "After-the-fact scrutiny by courts of the sufficiency of an affidavit should accord great deference to the magistrate's determination of probable cause." *Id.* (quoting *Illinois v. Gates*, 462 U.S. at 236 (internal quotation marks omitted)). "As always, the ultimate touchstone of the Fourth Amendment is reasonableness." *United States v. Cobb*, 970 F.3d 319, 327 (4th Cir. 2020).

Defendant relies on *Riley v. California*, 573 U.S. 373, 375 (2014) and *Carpenter v. United States*, 585 U.S. 296, 316 (2018) in her effort to exclude the evidence obtained by the search. Both cases involved warrantless searches. *Riley* involved a warrantless search of a cellphone incident to arrest and *Carpente*r involved a warrantless search of cell-site records. However, law enforcement executed the search of the Google accounts after obtaining a warrant. Thus, the reasoning of *Riley* and *Carpenter* is not analogous to the facts of this case. *See United States v. Watson*, No. 3:21-cr-353, 2022 WL 9569323, at *14 (M.D. Pa. Oct. 14, 2022) ("As described above, *Riley* addressed only warrantless searches and said nothing about the appropriate scope of the search of a cell phone pursuant to a warrant.")

**B. A Sufficient Nexus Existed between the Google Accounts and the Crimes Under Investigation.**

The Fourth Amendment requires a sufficient nexus between "the evidence sought and the place to be searched." *United States v. Jones*, 942 F.3d 634, 639 (4th Cir. 2019), but the nexus "may be established by the nature of the item and the normal inferences where one would likely keep such evidence." *Id.* (quoting *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988)). Indeed, "[a] sufficient nexus can exist between a defendant's criminal conduct and [the location to be searched] even when the affidavit supporting the warrant 'contains no factual assertions directly linking the items sought to the [location to be searched.]" *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005). Courts have routinely relied on such inferences in the context of electronic evidence. *See, e.g.*, *United States v. Suiero*, 59 F.4th 132, 140 (4th Cir. 2023); *United States v. Kvashuk*, 29 F.4th 1077, 1085-86 (9th Cir. 2022).

In determining probable cause, a judge may rely on an officer's assertion of training-and-experience-based knowledge to support a nexus between criminal activity and the place to be searched. *United States v. Jordan*, 2023 WL2947433, at *5 (4th Cir. 2023) (quoting *United States v. Williams*, 548 F.3d 311, 319 (4th Cir. 2008) (unpub.) (finding probable cause narcotics would be located in a residence where no drug activity was observed based on overarching investigation and agent's training and experience that drug traffickers frequently conceal narcotics within their own residence); *United States v. Martin*, 2021 WL 248671, at *2 (4th Cir. 2021) (unpub.) (finding sufficient nexus where affiant detailed the training and experience related to the drug trade); *United States v. Wienke*, 733 F. Appx. 65, 68-69 (4th Cir. 2018) (finding probable cause can be established based on an agent's training and experience coupled with the inherent reasonableness that the items sought would be in a particular location).

Warrants may reach evidence that helps establish a motive, rebuts a defense that a defendant may raise at trial, or impeaches a defendant. *Messerschmidt v. Millender*, 565 U.S. 535, 551-52 (2012).

### C.  The Warrant Did Not Authorize an Unparticularized or Overbroad Search.

This Circuit has made clear that a warrant "may satisfy the particularity requirement *either* by identifying the items to be seized by reference to a suspected criminal offense or by describing them in a manner that allows an executing officer to know precisely what he has been authorized to search for and seize. *Cobb*, 970 F.3d at 329 (quoting *United States v. Blakeney*, 949 F.3d 851, 863 (4th Cir. 2020) (emphasis in the original); *United States v. Castro*, 881 F.3d 961, 964-65 (6th Cir. 2018). And a "warrant is not intended to impose a 'constitutional straight jacket' on investigating officers." *United States v. Manafort*, 323 F. Supp. 3d 768, 781 (E.D. Va. 2018) (citing *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010)).

A review of Attachment B of the warrant reveals the specific statutes under investigation and specific categories of items and evidence to be seized in connection to the criminal conspiracies and fraud schemes. The Google warrant confined "the items to be seized by their relation to designated crimes" and the description left "nothing to the discretion of officer[s] executing the warrant," *Williams*, 592 F.3d at 519; *see also United States v. Russian*, 848 F.3d 1239, 1245 (10th Cir. 2017) ("[W]arrants may pass the particularity test if they limit their scope either to evidence of specific federal crimes or to specific types of material.") (internal citations and quotations omitted). Accordingly, the executing agents were authorized "to seize only evidence of a particular crime" and could not engage in exploratory searches for general evidence of criminality. *See United States v. Fawole*, 785 F.2d 1141, 1144 (4th Cir. 1986) (a warrant generally satisfies the particularity requirement when it allows officers "to seize only evidence of

a particular crime"); *United States v. Young*, 260 F. Supp. 3d 530, 549 (E.D. Va. 2017), *aff'd in part*, 916 F.3d 368 (4th Cir. 2019) (rejecting particularity challenge to warrant that sought "all records and documents falling within eight enumerated categories.)

Defendant's assertion that "law enforcement unjustifiably seized and was granted unfettered authority to scrutinize the entire contents of the Defendant's Google account because she had a Gmail account" is wrong. *See* ECF 36 at 25. This argument misunderstands the nature of electronic evidence and the reasonable means necessary to examine it in order to locate and extract the files that contain the evidence allowed to be seized pursuant to a search warrant. Section I of Attachment B to the Google warrant itemized all the information to be disclosed by Google in connection with the identified email accounts. However, Section II of Attachment B to the Google warrant then identified the information to be seized from what Google produced. Warrants for electronic evidence typically divide Attachment B in this manner because Google employees (or employees from any other provider) should not be in the position to make the determination of what is relevant or irrelevant to the categories of information requested in the warrant. The provider and its employees are not qualified nor trained to search an account information as a law enforcement officer. Moreover, the provider is not familiar with the statutory violations and the facts of the case which determine what items should or should not be seized. "The purpose of the two-step process was to ensure that law enforcement, not Google, identified the records relevant to the criminal conduct at issue." *See United States v. Skinner*, No. 3:19-cr-19, 2021 WL 1725543, at *18-19 (E.D. Va. Apr. 29, 2021).

Investigators implemented a two-step review during the execution of the search warrant. Specifically, investigators gathered all of the electronic information produced by Google and then reviewed to determine what electronically stored information fell within the scope of the warrant

in a two-step process which is acknowledged by Fed. R. Crim. P. 41(e)(2)(B). The Fourth Circuit has also endorsed this two-step review and explicitly stated that it mitigates particularity concerns in electronic searches. *See United States v. Zelaya-Veliz*, 94 F.4th 321, 338 (4th 2024) (quoting *United States v. Mercery*, 591 F. Supp. 3d 1369, 1382 (M.D. Ga. 2022) ("noting the 'general practice for agents to comply with Rule 41 by creating a two-step process – the 'search' wherein the warrant will compel the third party to produce a broad array of electronic information, and the 'seizure' wherein the warrant will authorize the seizure of [] specified information.'").  In short, courts realize that "the nature of electronic evidence requires that filtering occur at the review level. This means that a cursory review of innocuous material may sometimes happen in order to establish what information is relevant." *Skinner*, 2021 WL 1725543, at *17–18 (citing *Williams*, 592 F.3d at 519–20).

Although Google provided the government with large amounts of electronic data, the plain terms of the warranted limited the extent to which the government could search these records in both time and scope. "While the [Google warrant] authorized investigators 'to open and cursorily view' many files, the mere observation of unrelated files 'did not involve an intrusion on [defendant's] protected privacy interests beyond that already authorized by the warrant, regardless of the officer's subjective motivations." *Id.* at 19 (citing *Williams*, 592 F.3d at 523; *Hill*, 459 F.3d at 978) (noting that a baggie containing a white powder during a drug-related search could be seized even if it were labeled "flour" or "talcum powder"). Accordingly, the Google warrant was sufficiently particular. Furthermore, "[t]he degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved. Thus, a warrant that describes the items subject to seizure in broad, generic terms can be valid if

the description is as specific as the circumstances and the nature of the activity under investigation permit." *Young*, 260 F. Supp. 3d at 548; *see also Castro*, 881 F.3d at 964-65.

Throughout her motion, the defendant relies on the case of *Eugene Burns v. United States*, 235 A.3d 758 (D.C. 2020) and *United States v. Winn*, 79 F. Supp. 3rd 904, 909 (S.D. Ill. 2015) for the proposition that a warrant should be stricken down when it provides probable cause for only narrow categories of data but nonetheless authorizes the review of the entire contents of a cellphone. ECF 36 at 35. Not only are *Burns* and *Winn* non-binding case on this Court, but both cases run contrary to the line of Fourth Circuit cases that deal with electronic evidence and "expressly held that investigators with a warrant to search a computer may review every file on the electronic device to determine whether the file can be seized pursuant to the warrant." *See*, *e.g.*, *United States v. Kamara*, Crim No. 1:23-cr-149-RDA, 2023 WL 8357946, *7 (E.D. Va. Dec. 1, 2023) (Alston, J.) (citing to *Cobb*, 970 F.3d at 328-29; *Williams*, 529 at 521-22). As discussed previously, a district court in the Eastern District of Virginia, applied the reasoning of this line of cases to a warrant involving a Google account. *See Skinner*, 2021 WL 1725543, at *17-18; *Cf. Zelaya-Veliz*, 94 F.4th at 338 (also acknowledging that that third parties often produced "a broad array of electronic information" in the context of a Facebook search and that investigators shifted through this information in the two-step review).

### D. The Warrant Properly Authorized the Seizure of Information Within the Reasonable Time Frame.

The defendant further alleges that the temporal scope of the warrant was overbroad as it ranged from November 2014 until approximately May 2022. The defense argues that this warrant fails the Fourth Amendment's particularity and probable cause requirements because it sought information from the Google account for "21 months prior to her being a suspect in the investigation and for two years after." ECF 36 at 4-5. She cites to the government's subpoena to

Wells Fargo which requested records from August 1, 2016, to the present [which was issued on May 22, 2021] to bolster this argument. *Id.*

As an initial matter, investigators' knowledge of a defendant's conduct is not static, this knowledge obviously changes over time as law enforcement officers learn more information. The point of an investigation is for law enforcement officers to gather more facts to refine their theories of the case, find evidence that either inculpates or exculpates individuals. Law enforcement officers should also be looking for evidence that explain the degree of an individual's involvement in the crime and for how long that individual engaged in criminal conduct. Moreover, individuals involved in fraud schemes are known to use multiple bank accounts that are often held at different banks, as the defendant did. *See* ECF 1 at ¶ 34. Thus, the fact that investigators believed the defendant received the funds from the fraud scheme in her Wells Fargo back in 2016 does not mean that law enforcement officers were unreasonable in searching for information that suggested the defendant may have joined the conspiracy when fraudulent conduct began, which dated back to at least by 2015.

The defendant's argument ignores Fourth Circuit precedent stating that "[a] search warrant does not fail the particularity requirement by not explicitly articulating a time frame." *Young*, 260 F. Supp. 3d at 550; *see also United States v. Poulin*, 671 F. Supp. 2d 822, 825 (E.D. Va. 2009) (Davis, J.) (upholding seizure of "files from 2006 to August 2007 even though none of the allegations made in the supporting affidavit covered this time period"). "[T]he degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved." *Manafort*, 323 F. Supp. 3d at 782.

There is also a substantial difference between a warrant with an overbroad time frame and a warrant whose search is not cabined by any sort of time frame. More importantly, the temporal

scope of the warrant was related to the facts of this case. The indictment, which comes at the culmination of an investigation, alleges that wire and mail fraud conspiracy and schemes began in April 2015 and lasted through in or around June 2020. *See* ECF 1 at ¶ 7, ¶ 42. Defendant Ogunwale became The Non-Profit's Acting Director of Business Development around December 1, 2014. *Id.* at ¶ 2. In this affidavit, the affiant noted how PayPal records indicated that a PayPal account was registered in October 2014 with Ogunwale's personal email address, Target Account 1, but listed Employee A as the registrant of that PayPal account ending in 8450 ("PayPal account 8450"). *See* ECF 36, Ex. 2 at ¶ 35; ECF 1 at ¶ 21. The affiant also explained how the PayPal account 8450 was linked to The Non-Profit credit card issued to Employee A and that from October 2014 to October 2019, this account was used to send numerous fraudulent payments, including multiple payments to Compass. *See* ECF 36, Ex. 2 at ¶ 35-38. Thus, it was reasonable for investigators to look for evidence that the fraud scheme and related conspiracies started in November 2014.

It is also important for investigators to have data as a reference point for a target's behavior before the criminal conduct is alleged to have started. The changes in a target's behavior over time can be important evidence of crimes. For example, the amount of contact between coconspirators, including the frequency and types of communications between them can be evidence of their involvement in the alleged criminal conduct or the existence of an illegal agreement. The comparison of how defendant Ogunwale processed The Non-Profit's invoices before the fraud scheme and conspiracies began versus after the criminal conduct commenced can serve as a source of valuable evidence showing his fraudulent intent to commit the alleged offenses. Notably, the affidavit specifically stated "stored electronic data may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information in the Google account may indicate its user's motive and intent to commit a crime." The warrant

14

documents also requested evidence regarding each Target Account "user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning related to the criminal activity under investigation." *Id.* at p. 36. The same reasoning explains why data that compares how defendant Ogunwale treated other contractors and consultants that worked for The Non-Profit compared to his coconspirators, including the defendant, is important.

Similarly, the ability to receive electronic information that postdates the conspiracy and fraud scheme also provides important reference points for the investigation, law enforcement has the opportunity to examine if behavior patterns change back, or if a target takes steps to conceal the fraud schemes and conspiracy. The affidavit also specifically notes that "information in the [Target Accounts] may indicate … consciousness of guilty (*e.g.*, deleting communications in an effort to conceal them from law enforcement)." *See id.* at ¶ 102. Defendant Ogunwale was employed by The Non-Profit until August 2020, (*Id.* at ¶ 9) and it is reasonable for law enforcement to search to see if he restarted the charged fraud offenses. Furthermore, a review of data that is generated before and the time of the fraud scheme and conspiracy was also important to determine if defendant Ogunwale's company, Compass Management Services and Solutions, LLC ("Compass") performed any work on behalf of The Non-Profit that had been invoiced.

Information derived from Google before or after the criminal conduct is also critical evidence to help the government to establish the identity of the user of the Target Accounts and provides invaluable user attribution evidence. As the affidavit explained, user-generated content such as "personal correspondence, personal photographs, purchase receipts, contact information, [and] travel itineraries," . . . "can provide crucial identification evidence, whether or not it was generated close in time to the offenses under investigation. *See id.* at ¶ 103 This is because "people that commit crimes involving electronic accounts (*e.g.*, e-mail accounts) typically try to hide their

identities, and many people are more disciplined in that regard right before (and right after) committing a particular crime." *Id.* Furthermore, earlier content can be very valuable since criminals typical "improve their tradecraft over time" and "learn how to better separate their personal activity from their criminal activity, and they typically become more disciplined about maintaining that separation, as they become more experienced." *Id*.

Finally, the defendants were engaged in a long-term conspiracy. The embezzlement scheme lasted for over five years. Thus, the extensive nature of the conspiracy being investigated in this case meant that "less temporal specificity [was]s required here than in other contexts where evidence can more readily be confined to a particular time period." *Manafort*, 323 F. Supp. 3d at 782. Meaning, if the fraud was a shorter period of time, one would expect a tighter time frame. But because this was longstanding fraud, there by extension should be more flexibility of the temporal time frame.

Because "[t]he degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved," *Davis*, 67 Fed. Appx. at 777 (quoting *Torch*, 609 F.2d at 1090), Judge Buchanan properly authorized the government to seize evidence that had a wider temporal range but narrowly tailored in terms of subject matter.

### E.  The Types of Data Sought from Google Were Not Overbroad.

Defendant challenges probable cause to search the different types of Google services data sought that were maintained Google. Specifically, defendant argues there was no probable cause to allow law enforcement to search categories of information from Google such as email services, calendar services, file sharing or storage services (e.g., Google Drive which is cloud storage), Google Voice (voice calls, voicemail and SMS text messaging), Hangouts (instant messaging and video chats), Google+ (social networking), Google Groups (group discussions), Google Photos

(photo sharing) and YouTube (video sharing), web browsing and search tools such as Google Search (internet searches), Web History (bookmarks and recorded browsing history), and Google Chrome; online productivity tools such as Google Calendar, Google Contacts, Google Docs (word processing), Google Keep (storing text), Google Maps and other location services, Language Tools (text translation); Google Analytics; Google AdWords; Pixel Phone and Google Play   The arguments should be rejected.

The affidavit describes how an individual's Google account can be used for different types of electronic communication including instant messaging, photo and video sharing, voice calls, SMS messaging and social networking. ECF 36, Ex. 2 at ¶ 95. The affiant further details how a "Google subscriber can store contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history" and other types of information on Google's servers and how that that information can provide evidence of who controlled, used and/or created a Google account. *Id.* at ¶ 95, 102. The affidavit also explicitly states that "identification evidence from one period can still be relevant to establishing the identity of the account user during a different, and even far removed, period of time." *Id.* at ¶ 103.

The Supreme Court has held that the police may search for "mere evidence" in which case "probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." *Anderson v. Maryland*, 427 U.S. 463, 483 (1976). A fair reading of the search warrant affidavit reveals that probable cause existed for the types of information requested from Google, all of which is relevant to establish, *inter alia:* (1) the identification or location of the user(s) of the Target Accounts; (2) the relationships, contacts, and communications amongst coconspirators, and/or witnesses; (3) the substance of communications; (4) the date and location of where the targets were during relevant communications and when the

Target Accounts were used; (5) information regarding the target Account users' state of mind; (6) the formation and continuation of the criminal conspiracy; and (7) user attribution evidence to ensure that the targets under investigation and at trial were in fact the individuals using the Target Accounts as opposed to someone else using or hacking into the Target Accounts. Courts regularly uphold warrants authorizing the seizure of these types of information. *See, e.g.*, *Young*, 260 F. Supp. 3d at 550 (noting that courts have routinely upheld warrants authorizing the seizure of information related to potential sources of evidence, including *interalia,* aliases used by the defendant, other internet accounts, and other physical places where the target may have hidden evidence."); *Skinner*, 2021 WL 1725543, at *12 (rejecting arguments that law enforcement's search tied to location, shopping history, and online communications were overbroad, noting such information was relevant to the charges of kidnapping and child pornography and were cabined by reference to the statutes stated in the warrant); *United States v. Aboshady*, 951 F.3d 1, 8-9 (1st Cir. 2020) (rejecting arguments that searches for identity evidence showing ownership and control of six Gmail accounts belonging to the defendant were constitutionally impermissible).

Courts have denied motions to suppress Facebook and other social media evidence based on similar arguments. *See, e.g., United States v. Daprato*, No. 2:21-cr-15-JDL, 2022 WL 1303110, at *2-3, 7-8 (D. Me. May 2, 2022) (finding no overbreadth or lack of particularity related to a Facebook search warrant seeking disclosure of 17 categories of data); *United States v. Franklin*, 2022 WL 3572697, at *8-9 (W.D.Mo. 2022) (rejecting particularity and overbreadth challenges to Instagram search warrant where defendant claimed law enforcement sought disclosure of the "entire" account involving a gang-related narcotics investigation); *United States v. Liburd*, 2018 WL 2709199, at *3 (E.D.N.Y. June 5, 2018) (holding due to the nature of digital media searches, it was proper for the search warrant to allow the FBI to search the entire contents of a defendant's

Facebook account, even if the account also contained information unrelated to criminal activity); *United States v. Westley*, 2018 WL 3448161, at *12 (D. Conn. July 17, 2018) (equating Facebook information to other "electronic evidence" and finding that "extremely broad" disclosure is a practical necessity when dealing with electronic evidence); *United States v. Sharp*, 2015 WL 4641537, at *15 (N.D. Ga. Aug. 5, 2015) (rejecting Facebook overbreadth arguments where Facebook disclosed the "entire cache of information" without limits based on time and stating "[t]he fact that [a] warrant call[s] for seizure of a broad array of items does not, in and of itself, prove that the warrant fails to meet this requirement of particularity."); *see also United States v. Shah*,[4] 2015 WL 72118, at *18 (E.D.N.C. Jan. 6, 2015) ("A number of courts have authorized the government to obtain the entire contents of an email account in order to later determine which particular emails come within the scope of a search warrant"); *United States v. Alford*, 744 Fed Appx. 650, 653 (11th Cir. 2018) (finding warrant requiring disclosure of nearly all the data on a Google account proper under the circumstances because officers were attempting to identify an unknown perpetrator linked to the account).

The evidence requested by the Google warrant, including the photos and Google maps data, is attribution evidence that is invaluable in identifying the user of a particular account. The affidavit stated as such in Paragraph 102, stating that "[E]-mail communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time." The defendant minimizes the government's need to find evidence of identity of the users of the Target Accounts. The defense argues that the government

---

[4] The United States notes that the *Shah* court held that the warrant at issue in that case did not satisfy the Fourth Amendment but upheld the search under the good faith exception. However, the Shah warrant is distinguishable from the warrant in this case as the *Shah* search was not cabined by any sort of time frame.

already knew that Ajayi was the user of the Target Account 6 and Target Account 7 because she signed her name to the invoices and emails. *See* ECF 36 at 13, n. 31. As the Court well knows, the burden of proof to obtain a search warrant – mere probable cause – is much lower than the government's burden of proof to sustain a conviction.

Additionally, user attribution data is particularly important in this investigation as defendant Ogunwale appeared to use another individual's name and credit card to execute part of fraud scheme. Specifically, Target Account 1 was linked to a PayPal 8450 account that was used to house the embezzled funds. This PayPal account was allowed to be used by The Non-Profit and was registered to Employee A (as well as one of The Non-Profit credit cards connected to PayPal 8450 account) but listed Target Account 1 (which appeared to be Ogunwale's personal email address) as its email. Thus, it was necessary for investigators to gather this user attribution evidence to determine the true operators of each of the Target Accounts that were involved in fraudulent activities and to rebuff a potential defense that defendant Ajayi or defendant Ogunwale were not the users of the Target Accounts.

### F.  Even If This Court Were Now to Find Probable Cause Lacking, the Defendant's Motion Should Be Denied Because the Officers Conducting the Searches Relied in Good Faith on Facially Valid Warrants.

A review of the affidavit submitted in support of the search warrant application in this case leaves no doubt that the warrant was supported by ample probable cause. Nor was the warrant overbroad or lacking in particularity. But even if probable cause were found wanting, the evidence should not be suppressed pursuant to the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 913, 920 (1984); *see also United States v. Burton*, 756 Fed. Appx. 295, 300-01 (4th Cir. 2018) (assuming, without deciding that cell phone and home warrants were overbroad, court found that officers acted in good-faith reliance on warrants). In *Leon*, the

Supreme Court held that evidence need not be suppressed when the police obtain evidence through objective good faith reliance on a facially valid warrant that is later found to lack probable cause. 468 U.S. at 913, 920. This "good faith" exception to the exclusionary rule is proper because suppression in this situation would not further the deterrent function of the rule. *Id.* at 918-20. When determining whether the good faith exception should apply to a search based on a warrant, the Fourth Circuit counsels to "accord 'great deference' to a magistrate's determination of probable cause, given that '[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause.'" *United States v. Burton*, 756 Fed. Appx. 295, 303 (4th Cir. 2018) (quoting *Leon*, 468 U.S. at 914).

"[A] court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (*quoting Leon*, 468 U.S. at 922 n. 23); *accord Qazah*, 810 F.3d at 886 ("[I]n the ordinary course, the exclusion of evidence is not the proper remedy."). "The error in such a case rest with the issuing magistrate, not the police officer, and 'punish[ing] the errors of judges' is not the office of the exclusionary rule." *Davis v. United States*, 564 U.S. 229, 39 (2011) (quoting *Leon*, 468 U.S. at 916). Of relevance, the Court has applied that reasoning both where the warrant was allegedly unsupported by probable cause (as in *Leon*, 468 U.S. at 903), and where it was found to be overbroad (as in the companion case of *Massachusetts v. Sheppard*, 468 U.S. 981, 988-91 (1984)).

Furthermore, the Supreme Court has reiterated that:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or

> grossly negligent conduct, or in some circumstances recurring or systemic negligence.

*Herring v. United States*, 555 U.S. 135, 144 (2009). The circumstances of this case fall within the heartland of the good-faith exception. The affiant prepared a 39-page affidavit that (a) described in detail facts that undisputedly establish probable cause to believe that the defendant and Ogunwale committed the subject offenses and (b) also included facts to establish probable cause that evidence of those violations would be found within the Target Accounts. The warrant application, including the affidavit in support of the warrant, was reviewed by a prosecutor. The affiant then submitted the application to a neutral magistrate judge. Having thus taken "every step that could reasonably be expected," the affiant was entitled to conclude "that the warrant authorized a search for the materials outlined in the affidavit," *Sheppard*, 468 U.S. at 989; *See United States v. McLamb*, 880 F.3d 685, 690-91 (4th Cir. 2018) (good-faith exception applied where no "judicial precedent" had resolved legal questions underlying the issuing judge's authority and the FBI consulted with prosecutors before seeking the warrant). Even if the affidavit did not establish probable cause to support all the items seized, it was not so "bare bones" or "so lacking indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923; *see Millender*, 565 U.S. at 547 (stating that "the threshold for establishing this exception is a high one, and it should be").

The Supreme Court has identified four situations in which police cannot be found to have acted with "objective reasonableness," and in which *Leon*'s good faith exception is therefore inappropriate: (1) when "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth," (2) when "the issuing magistrate wholly abandoned his judicial role," (3) when the warrant was "so facially deficient–i.e., in failing to particularize the place to be searched

or the things to be seized–that the executing officers cannot reasonably presume it to be valid," and (4) when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923; *accord United States v. Hyppolite*, 65 F.3d 1151, 1156 (4th Cir. 1995) (quoting *Leon*, 468 U.S. at 923).

In this case, nothing in the record suggests that any of these situations applies. Yet, the defendant argues that the Google warrant's deficiencies are "so extreme and obvious that a reasonably well-trained FBI agent 'would have known the search was illegal despite the issuing judge's authorization.'" ECF 36 at 37. However, even a couple of the cases cited by the defendant as examples of purported overbroad searches, were upheld by courts which found the investigators executing the warrants acted in good faith.

Specifically, the Eleventh Circuit recently applied the good faith exception to the iCloud search warrant in *United States v. McCall*, 84 F.4th 1317, 1327-28 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 1042 (2024). The warrant in that case allowed investigators to review "practically all conceivable content on the cloud account" and "authorized a search of seven categories of data: the phone's registration information, its iCloud data (including all email content, photos, documents, contacts, and calendars), Find My iPhone data, communications records, iCloud backup history, Facetime communications logs, and iTunes account information." *Id.* Notably, the *McCloud* iCloud warrant was not cabined by any temporal restriction. Yet the *McCloud* court recognized that while "Fourth Amendment standards are largely settled, their application to developing areas of technology is not." *Id.* at 1317.

Similarly, in *United States v. Blake*, 868 F.3d 960, 975 (11th Cir. 2017), the Eleventh Circuit declined to suppress the evidence[5] uncovered from Facebook account searches because "probable cause supported issuance of the warrants" and that "while the warrants may have violated the particularity requirement, whether they did is not an open and shut matter" that would have been evident to law enforcement.

Finally, as the defense noted the Fourth Circuit also ruled that law enforcement officers acted in good when they executed a Facebook search warrant, which was not cabined by a temporal limitation in the *Zelaya-Veliz* case. *See Zelaya-Veliz*, 94 F.4th at 340-41. Recognizing the new questions posed by electronic warrants, the Fourth Circuit advised courts "to proceed with caution" when confronted with "novel questions posed by digital technology." *Zelaya-Veliz*, 94 F.4th at 340. Within *Zelaya-Veliz*, the Fourth Circuit also clarified that "[c]ourts should not punish law enforcement officers who are on the frontiers of new technology simply because they are at the beginning of a learning curve and have not yet been apprised of the preferences of courts on novel question. *See id.* at 341.

The warrant in this case is drawn more narrowly than the warrants that were upheld by the good-faith exception in *Blake*, *McCloud* and *Zelaya-Veliz.* None of these three warrants had a temporal restriction. The warrant at issue in this case does. Furthermore, the search of the Google accounts at issue in this case were executed using the two-step review contemplated in Fed. R. Crim. P. 41(e)(2)(B).

The defendant does not cite a Fourth Circuit or Eastern District of Virginia case that found of a violation of the particularity or overbreadth requirements in the context of a Google account

---

[5] The *Blake* Court not only declined to suppress the evidence from these warrants, but also declined to decide if the searches were in violation of the Fourth Amendment.

search, let alone one that ultimately ruled for suppression. In light of this, even if the warrant did run afoul of the Fourth Amendment, it's hardly an "open and shut matter," especially in the Fourth Circuit. The good faith exception applies.

Accordingly, even if the Court were to conclude that the warrant violated the Fourth Amendment, the Court should deny the defendant's motion to suppress. *See also United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993) (denying a motion to suppress on the basis of the "good faith exception" to the exclusionary rule where the search affidavit failed to state the time period during which the illegal activity occurred).

### G. Defendant Admits There Was Probable Cause to Search and Seize Emails And the Doctrine of Severance Applies.

The defendant's argument that all evidence should have been suppressed due to alleged overbreadth is contrary to the law in this Circuit. (ECF 36 at 41-42). Even assuming overbreadth, such infirmity does not doom the entire warrant. *See Cobb*, 970 F.3d at 330. "Under the severance doctrine, 'the constitutionally infirm portion' of a warrant - usually for lack of particularity or probable cause - is separated from the remainder and evidence seized pursuant to that portion is suppressed; evidence seized under the valid portion may be admitted." *Cobb*, 970 F.3d at 330; *see also Castro*, 881 F.3d at 965 ("The remedy is to sever the offending phrase from the warrant, suppress any evidence collected under it, and admit the evidence collected under the valid portions that remain."). Here, defense concedes that there is probable cause for the warrant for the defendant's email (ECF 36 at 1, 31, 41), admitting that "the warrant sets forth some probable cause to seize Defendant's email accounts." *Id.* at 1. Although government maintains that the entire warrant was supported by probable cause and should be upheld, in the alternative that the Court finds parts of the warrant were overbroad, the government  would agree to only introduce emails, documents that were sent as attachments to the emails, and the email account subscriber

information,[6] as exhibits at trial. Thus, in the event that the Court found parts of the warrant to be invalid, the government would not introduce any evidence collected from the invalid parts of the warrant such as the defendant or defendant Ogunwale's Google Hangouts data, photos, text and communications, location history, or web and internet search history[7] and only introduce evidence seized pursuant to the valid portions of the warrant. However, if the Court denies the motion to suppress, the United States reserves its right to introduce any type of evidence collected pursuant to the warrant.

CONCLUSION

For the foregoing reasons, the defendant's motion to suppress should be denied.

Respectfully submitted,

Erik S. Siebert
United States Attorney

Dated: January 24, 2025,                    By:    _____/s/_____
                                                    Kathleen E. Robeson
                                                    Kimberly M. Shartar
                                                    Assistant United States Attorneys
                                                    United States Attorney's Office
                                                    2100 Jamieson Avenue
                                                    Alexandria, Virginia 22314
                                                    Phone: (703) 299-3700
                                                    Fax: (703) 299-3981
                                                    Email: kathleen.robeson@usdoj.gov

---

[6] The Fourth Circuit has previously held that there is no privacy interest in "internet and phone 'subscriber information,' – i.e. a person's name, email address, telephone number, and physical address. *See, e.g.*, *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010).

[7] The United States reserves the right to present user attribution evidence derived from the search of the other Google features, including but not limited to Google maps, text and voice communications, internet search history, to impeach either defendant if they testify at trial in accordance with *United States v. Havens*, 446 U.S. 620 (1980).

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2025, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of filing ("NEF") to

counsel of record for the defense.


By:    _____/s/_____
       Kathleen E. Robeson
       Assistant United States Attorney
       United States Attorney's Office
       2100 Jamieson Avenue
       Alexandria, Virginia 22314
       Phone: (703) 299-3700
       Fax: (703) 299-3981
       Email: kathleen.robeson@usdoj.gov