IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 1:24-CR-00165 (MSN) |
| v. | ) | |
| | ) | |
| ABIODUN OGUNWALE, | ) | |
| a.k.a Abbey Ogunwale | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ABIMBOLA AJAYI, | ) | |
| a.k.a. Abbi Ajayi | ) | |
| | ) | |
| Defendants. | ) | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S FOURTH
MOTION FOR ISSUANCE OF RULE 17(c) SUBPOENA

The fourth time is not the charm. Defendant Ogunwale has submitted several prior Rule 17 Subpoena Requests. ECF 30, 67, 70, 84, 85. As the defendant admits, the Court has denied nearly all his subpoena requests. ECF 126 at 2. This Rule 17 Subpoena Requests is again seeking the same categories of documents that the previously denied Rule 17 Subpoena Requests sought. The Court was right then, and it is right now to reach the same conclusion that it reached before. The Court should deny this Rule 17 Subpoena Request as well because the requested subpoena still does not satisfy the rigorous test set forth in *United States v. Nixon*, 418 U.S. 683, 699-700 (1974).

As this Court knows, the Supreme Court established a four-part test to govern the issuance of Rule 17(c) subpoenas in *Nixon*. A Rule 17(c) subpoena may seek only specific, relevant, and admissible trial evidence. *Nixon*, 418 U.S. at 700; *see also In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988). In order to secure the issuance of a pretrial subpoena that requires the production of specified documents pursuant to Rule 17(c), the **moving party** must demonstrate:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 699-700 (footnote omitted) (emphasis added). It is the defendant's burden – not the government's burden – to prove that he has satisfied the *Nixon* standard.

## II. Individualized Responses to the Fourth Rule 17 Subpoena Request

The United States incorporates by reference the legal standard for Rule 17 subpoenas, arguments, and facts previously articulated in the United States' first response to defendant Ogunwale's Rule 17 Subpoena Request filed on February 25, 2025, its surreply filed on March 3, 2025, and the United States' second response to defendant Ogunwale's Rule 17 Request filed on March 17, 2025. ECF 55, 64, 75.

Firstly, the defendant filed this motion on the eve of trial, far past the motions' deadline. Additionally, the defendant's Fourth Rule 17 Subpoena Request is once again too broad and requests documents that are irrelevant to this case. For those reasons, the Court should deny the defendant's Fourth Rule 17 Subpoena Request. The United States will now address the defendant's specific requests.

## Request 1. Invoices from Other Contractors Deemed Not to be Fraudulent

Defendant Ogunwale submitted nearly identical requests for other contractors' invoices in his prior Rule 17 subpoena requests (ECF 30 and 67) which the Court denied. ECF 63, 80. As the defendant is literally asking for the same thing, the Court should again deny this request.

The defense again failed to articulate how the invoices from other contractors were relevant to the ongoing litigation. The United States reincorporates its response to this request that was filed on March 17, 2025. ECF 75. The Superseding Indictment alleges that defendant Ogunwale and

defendant Ajayi did not perform the work as invoiced and for which the pair received payments from The Non-Profit. Whether or not other contractors are performing their invoiced work is irrelevant to the particular fraud scheme alleged in the Superseding Indictment. *See, e.g.*, *United States v. Oloyede*, 933 F.3d 302, 315 (4th Cir. 2019) (Fourth Circuit held that district court did not abuse its discretion by preventing defense counsel from asking FBI agent if the agent was aware of other fraud schemes targeting attorneys).

The defense argues that he wishes to compare examples of non-fraudulent invoices to the invoices at issue in this case to show that the non-fraudulent invoices are no more detailed or descriptive than the fraudulent invoices at issue in this case. ECF 126 at 2-3. However, as the government stated at the last hearing on May 2, 2025, the invoices submitted by defendant Ajayi are not vague. Instead, these invoices falsely claimed that defendant Ajayi performed specific work, and that defendant Ajayi was the recipient of the funds The Non-Profit paid out for the invoices. *See* Ex. A (an example of one of defendant Ajayi's invoices and a proposed government trial exhibit 107-8). The fact that other invoices, which are not linked to the fraud, may have the same level of detail when describing the work performed does not make it any more or less likely that defendant Ajayi performed the work that was invoiced. Similarly, the other non-fraudulent invoices' level of detail in their description does not make it any more or less likely that defendant Ogunwale was or was not the true recipient of some of the funds that The Non-Profit paid out for Ajayi's invoices.

The defendant also appears to be requesting these invoices to shoehorn in impermissible good character evidence. *See* ECF 126 at 3. The United States incorporates by references its Motion in Limine to Preclude the Defense's use of Improper "Good Character" Evidence. ECF 111 at 2-5. As the United States argued in this motion, the defendant should be excluded from

offering other, specific examples of actions in conformity with the law or The Non-Profit's workplace policies. *Id.* The Court granted this motion. ECF 124. Examples of defendant Ogunwale's approval of other alleged non-fraudulent invoices are specific examples of improper "good character" evidence that should be excluded from the trial by the Court's previous ruling. Thus, the Court should again deny defendant Ogunwale's request for other invoices.

Finally, as the United States argued in its Second Response to defendant Ogunwale's Second Motion for a Rule 17 Subpoena, requiring The Non-Profit to produce these other invoices would place an unfair and undue burden on The Non-Profit as defendant Ogunwale's trial is scheduled to start on May 12, 2025 – *seven* calendar days from now.

**Request 2. All Prepositioning Documents from 2014 to 2020 in The Non-Profit's Possession**

Defendant Ogunwale filed this motion well after the motions' deadline. In contrast to this late filing, defendant Ogunwale timely filed his other Rule 17 Subpoena Requests. *See* ECF 30, 67, 70. Defendant Ogunwale's First Rule 17 Subpoena Request sought "records of all Pre-positioning activities, including invoices and work hours performed by consultants or contractors handled by A. Ogunwale during his time at [The Non-Profit.]" ECF 30 at 2. Defendant Ogunwale's First Rule 17 Subpoena Request was denied because it failed to meet the *Nixon* standard and requested 57 different types of records. ECF 30, 63. Defendant Ogunwale then filed a more streamlined motion that requested 12 categories of records. ECF 67, 70. Notably, defendant Ogunwale *choose* not to request prepositioning records in his Second Request for a Rule 17 Subpoena despite requesting many other types of records.  The Court should not entertain this very late request from the defense when he had other multiple opportunities to request these records.

Secondly, defendant Ogunwale's request is again, much too broad to meet the *Nixon* standard. His request in the Fourth Rule 17 Subpoena Request is broader than the request for prepositioning records that he put forward in the First Rule 17 Subpoena Request that the Court

denied. ECF 63. For the fourth iteration of the defendant's motion, he requested all prepositioning documents from 2014 through 2020. The term "prepositioning document" is not a term of art and can encompass a wide range of documents or records. Defendant Ogunwale did not define what he considers to be a "prepositioning document" or provide precise examples of the sort of documents that he is hoping to receive from the subpoena production. Defendant Ogunwale's has had production disputes with The Non-Profit regarding their production in response to the prior Rule 17 subpoena. *See* ECF 95, 97, and 114. Defendant Ogunwale's vague and ambiguous Rule 17 Subpoena Request does not only violate the *Nixon* standard, but it will also lead to additional practical issues that will burden The Non-Profit and ultimately the Court. Allowing defendant Ogunwale to subpoena records that are not defined means that he can put forward vague and ambiguous request to The Non-Profit that could lead to even more subpoena production fights, placing an undue burden on The Non-Profit.

The Court should not allow defendant Ogunwale to continue to put forward vague and ambiguous requests for documents, particularly mere days before trial is scheduled to start. Defendant Ogunwale filed the instant motion on Friday, May 2, 2025. The Court has scheduled an expedited hearing on the motion for Thursday, May 8, 2025. ECF 132. Thus, it appears that the earliest the Court would issue any subpoena would be Thursday, May 8, 2025. As trial is scheduled for May 12, 2025, this would give The Non-Profit approximately one business day to produce the vague and ambiguous records (that the defendant has not bothered to define) right before trial. This incredibly tight deadline would pose an unreasonable and oppressive on any third party, including The Non-Profit. Under Fed. R. of Crim. P. 17, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive. Based on the briefing schedule for this motion and pending trial date, it appears unlikely that the Court would be able to consider any

5

motion to quash or modify by The Non-Profit. That is not fair to The Non-Profit,[1] particularly as there is a real risk that defendant Ogunwale could file *another show cause motion* against The Non-Profit.

Moreover, prepositioning documents that are not related to the fraudulent invoices are not relevant to the questions before the jury. In defendant Ogunwale's Second Rule 17 Subpoena Request, he requested "proposals developed by A. Ogunwale that specifically originated based on the capture planning efforts and business development efforts in Nigeria, Mozambique, Haiti, Malawi, Kenya, Ethiopia, South Africa, Bangladesh, ect." ECF 30 at 4. In its response, the government asked for defendant Ogunwale to specify the proposals the motion sought. ECF 75 at 11. After the hearing, the Court directed the government to provide defendant Ogunwale to list the specific invoices at issue in this case and then defendant Ogunwale could request specific proposals based on that list. ECF 80. Following the hearing, the government provided this list of invoices to the defense and then defendant Ogunwale based his subpoena request on the specified invoices. ECF 84, 85. Since then the United States has also provided the defense with the proposed Government exhibits, which include the invoices previously detailed to the defense. At a bare minimum, defendant Ogunwale should have limited his request to prepositioning documents connected to the funding opportunities that are referenced in the fraudulent invoices detailed by the government to the defense.

The fact that defendant Ogunwale <u>again</u> choose not to limit his request to the prepositioning records connected to specific invoices or define the term "prepositioning documents," despite participating in multiple rounds of briefing and the prior hearing where the Court limited the

---

[1] Under Rule 17, it does not appear that The Non-Profit would have standing to move to quash the subpoena until after it is issued by the Court.

subpoena production to proposals related to specific invoices, shows he is seeking the type of expansive discovery or fishing expedition prohibited by Rule 17. Furthermore, the defendant's request for "all" prepositioning documents from 2014 to 2020 is broader than his requests for proposals in his Second Rule 17 Subpoena Request. Thus, the Court should deny this request for "all" prepositioning documents from 2014 to 2020. *See, e.g.*, *United States v. Lindberg*, No. 5:19-cr-22-MOC-DSC-1, 2019 WL 7000089, at *2 (W.D.N.C. Dec. 20, 2019) (finding that request for "all records" and "all communications" "represent exactly the kind of expansive, imprecise discovery that falls outside of the scope of Rule 17(c)").

Defendant Ogunwale's Fourth Rule 17 Subpoena Request also mischaracterized the government's evidence and the Court's rulings from the May 2, 2025, hearing. As the government stated at the hearing and stated in its Response to Defendant Ogunwale's Objections to the Government's Proposed Exhibits (ECF 120 at 1), it will not enter into evidence a certification for a lack of record for The Non-Profit's proposal records or prepositioning records concerning work that defendant Ajayi purported to have completed for The Non-Profit. As the United States stated at the hearing and in other filings, it plans to ask witnesses various questions that are answered from their personal knowledge, i.e. if certain witnesses worked with defendant Ajayi on certain funding opportunities, if employees of The Non-Profit were supposed to confer with other employees of The Non-Profit before they pursue certain funding opportunities. *See* ECF 102, 120 (which the United States incorporates by reference here). Such testimony is not dependent on an individual's search of prepositioning records and a subpoena production of such records is not needed. Additionally, as noted in the hearing, The Non-Profit is providing to the defense by close of business May 6, 2025 who conducted the search for the proposals and what was searched.

## **<u>CONCLUSION</u>**

For the foregoing reasons, including that the defendant has failed to meet the *Nixon* standard, the government respectfully requests that the Court deny the defendant's motion and not issue the requested Rule 17(c) subpoena to The Non-Profit.[2]

Respectfully submitted,

Erik S. Siebert
United States Attorney

Dated: May 6, 2025          By:          /s/
                                         Kathleen E. Robeson
                                         Kimberly M. Shartar
                                         Assistant United States Attorneys
                                         Phone: (703) 299-3700
                                         Email: kathleen.robeson@usdoj.gov

---

[2] In the event the Court disagrees with the government and orders that the defendant's motion be granted, in full or in part, the government respectfully requests that the defendant be ordered to supply the government with copies of any materials obtained pursuant to the subpoenas. *See* Fed. R. Crim. P. 17(c)(1).

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2025, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send a notification of filing ("NEF") to

counsel of record for the defense.


By:     _____/s/_____
Kathleen E. Robeson
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
mail: kathleen.robeson@usdoj.gov